NEAL S. SALISIAN, SBN 240277
neal.salisian@salisianlee.com
JARED T. DENSEN, SBN 325164
jared.densen@salisianlee.com
PATTY W. CHEN, SBN 322992
patty.chen@salisianlee.com
**SALISIAN | LEE LLP**
550 South Hope Street, Suite 750
Los Angeles, California 90071-2924
Telephone: (213) 622-9100
Facsimile: (800) 622-9145

MARISA D. POULOS (SBN 197904)
marisa.poulos@balboacapital.com
**BALBOA CAPITAL**
575 Anton Boulevard, 12th Floor
Costa Mesa, California 92626
Tel: (949) 399-6303

Attorneys for Plaintiff
AMERIS BANK d/b/a BALBOA CAPITAL

# THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERIS BANK, a Georgia state-chartered banking corporation, doing business as BALBOA CAPITAL,<br><br>Plaintiff,<br><br>vs.<br><br>VITACORE, INC., a Nebraska corporation, doing business as WEIGH OF LIFE,<br><br>Defendant. | Case No. 8:24-cv-01829-MWF(DFMx)<br><br>[Assigned to the Hon. Michael W. Fitzgerald]<br><br>**BALBOA CAPITAL'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT**<br><br>Complaint Filed: August 20, 2024<br>Trial Date: None |

TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 9, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 5A of the 350 West 1st Street, Los Angeles, CA, 90012, the Honorable Michael W. Fitzgerald presiding, plaintiff Ameris Bank, doing business as Balboa Capital ("Plaintiff" or "Balboa") will, and hereby does, apply for an entry of default judgment pursuant to Federal Rules of Civil Procedure Rule 55 and Local Rules 55-1, 55-2, and 55-3, against defendant Vitacore, Inc., a Nebraska corporation doing business as Weigh of Life ("Vitacore" or "Defendant"), for a judgment amount of **$99,706.36**.

PLEASE TAKE FURTHER NOTICE that Balboa seeks a default judgment against Defendant in the total amount of $99,706.36, as Balboa has established (a) a sum certain due and owing by Defendant to Balboa pursuant to the Equipment Financing Agreement entered into by Defendant and Balboa; (b) that Defendant is not in military service and is neither a minor or incompetent person; and (c) costs and attorneys' fees are properly awardable.

//
//
//
//
//
//
//
//
//
//
//
//
//

PLEASE TAKE FURTHER NOTICE that this motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the supporting declarations of Jared T. Densen and Don Ngo, and the exhibits attached thereto, the pleadings and papers filed in this action, and upon such further briefing, authorities, and argument submitted to the Court prior to, or during, the hearing on this matter.

DATED: November 12, 2024    SALISIAN | LEE LLP

By: _____/s/ J. Densen_____
    Jared T. Densen
    Patty W. Chen
    Neal S. Salisian

    Attorneys for Plaintiff
    AMERIS BANK d/b/a BALBOA CAPITAL

**TABLE OF CONTENTS**

I. INTRODUCTION AND RELEVANT FACTS ...............................................1
   A. Equipment Financing Agreement. ........................................................1
   B. Attorneys' Fees and Costs. ...................................................................2
   C. Motion for Default Judgment................................................................2
II. LEGAL ARGUMENT ....................................................................................3
   A. Plaintiff Will Be Highly Prejudiced If Its Motion for Default Judgment Is Denied.................................................................4
   B. Plaintiff Has A High Likelihood Of Success On The Merits Of Its Substantive Claims And Its Complaint Is Sufficiently Pled............................................................................................5
   C. The Sum Of Money At Stake Favors An Entry Of A Default Judgment Against Defendant.....................................................7
   D. There Are No Material Facts That Are Reasonably In Dispute. ...........8
   E. Defendant's Default Is Not The Result Of Excusable Neglect. ............9
   F. Policy Concerns Favor Default Judgment In This Matter. ..................11
   G. Plaintiff Has Proven Its Damages. .......................................................11
III. CONCLUSION .............................................................................................13

# TABLE OF AUTHORITIES

**CASES**

*Acoustics, Inc. v. Trepte Constr. Co.*,
  14 Cal.App.3d 887, 916 (1971) ..................................................................... 6

*Draper v. Coombs*,
  792 F.2d 915, 924 (9th Cir. 1986) ................................................................. 9

*Educational Serv., Inc. v. Maryland State Board for Higher Education*,
  710 F.2d 170, 176 (4th Cir. 1983) ................................................................. 9

*Eitel v. McCool*,
  782 F.2d 1470, 1471-72 (9th Cir. 1986). ............................................ 4, 5, 7, 8, 9

*Geddes v. United Fin. Group*,
  559 F.2d 557, 560 (9th Cir. 1977) ............................................................ 5, 8

*Landstar Ranger, Inc. v. Parth Enters, Inc.*,
  725 F.Supp.2d 916, 921 (C.D. Cal. 2010) ..................................................... 8

*McKnight v. Webster*,
  499 F.Supp. 420, 424 (E.D. PA 1980) .......................................................... 9

*NewGen, LLC v. Safe Cig, LLC*,
  804 F.3d 606, 616 (9th Cir. 2016) ........................................................... 9, 10

*O'Connor v. State of Nevada*,
  27 F.3d 357, 364 (9th Cir. 1994) ................................................................... 9

*Pena v. Seguros La Comercia, S.A.*,
  770 F.2d 811, 814 (9th Cir. 1985) ............................................................... 11

*Penpower Tech, Ltd. v. S.P.C. Tech.*,
  627 F. Supp. 2d 1083 (N.D. Cal. 2008) ............................................... 7, 8, 11

*PepsiCo, Inc. v. Cal. Sec. Cans*,
  238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). ............................................ 4, 5

*Reichert v. Gen. Ins. Co.*,
  68 Cal.2d 822, 830 (1968) .............................................................................. 5

*Shanghai Automation Instrument Co. Ltd. v. Kuei*,
  194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) ................................................. 10

*Walters v. Statewide Concrete Barrier, Inc.*,
   No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ........... 7

**STATUTES**

Code of Civil Procedure § 1620 ....................................................................... 6

Code of Civil Procedure § 3300 ....................................................................... 6

Fed. R. Civ. P. 55 ............................................................................................. 3

**OTHER AUTHORITIES**

RESTATEMENT 2d. CONTRACTS § 235(2) ........................................................ 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND RELEVANT FACTS

Plaintiff Ameris Bank, a Georgia state-chartered banking corporation, doing business as Balboa Capital ("Plaintiff" or "Balboa") submits the instant Motion for Default Judgment against Vitacore, Inc., a Nebraska corporation doing business as Weigh of Life ("Vitacore" or "Defendant").

### A. Equipment Financing Agreement.

This action involves a claim for damages by Balboa against Defendant for the breach of the written Equipment Financing Agreement No. 244146-001 (the "EFA"). [*See* Declaration of Don Ngo ("Ngo Decl."), ¶3, Exh. A.]

Specifically, Balboa, on the one hand, and Vitacore, on the other, entered into the EFA on or about September 15, 2023. [*See id*.] Under the terms of the EFA, Balboa loaned to Vitacore the sum of $80,970.00, in order to finance equipment for its business (the "Collateral"). [*See id*.]

Under the EFA, Vitacore was required to make sixty (60) monthly payments of $1,798.68, beginning on November 14, 2023. [*See id*., ¶4, Exh. A.] The last payment received by Balboa was credited toward the payment due for June 14, 2024. [*See id*.] Therefore, on or about July 14, 2024, Vitacore breached the EFA by failing to make the monthly payment due on that date, and thus, has remained continuously in default. [*See id*.]

At the time of Defendant's default, in addition to late charges in the sum of $323.76, there remained fifty-two (52) monthly payments, for a total of $93,855.13, due to Balboa. [*See id*., ¶5, Exh. B.]

Following Defendant's default, Defendant made two (2) additional full monthly payments for July 14, 2024 and August 14, 2024. [*See id*., ¶6.] Defendant has therefore been credited in the amount of $3,597.36. [*See id*.] Thus, **$90,257.77** remains owed to Balboa. [*See id*.] Defendant has since failed to make further payments. [*See id*.]

In addition, based on the amount due of $90,257.77, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from July 14, 2024, the date of breach, to December 9, 2024, the date noticed for the hearing of this Motion for Default Judgment for a total interest amount of **$3,683.28**, accruing at a rate of **$24.72 per day**, until the entry of judgment. [*See id.*, ¶7; *see also* Declaration of Jared T. Densen ("Densen Decl."), ¶¶5-6.]

### B.    Attorneys' Fees and Costs.

Pursuant to the EFA, Balboa is entitled to recover its attorneys' fees and costs from Defendant. [*See* Densen Decl., ¶7.] The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of **$5,210.31** for the EFA. [*See id.*] Balboa has indeed incurred **$555.00**, in recoverable costs - $405 for filing of the Complaint and $150.00 for service upon Vitacore. [*See id.*, Exh. C.]

### C.    Motion for Default Judgment.

Balboa's Motion for Default Judgment satisfies the procedural requirements of Local Rule 55-1 and 55-2, and Federal Rule of Civil Procedure 55(b). Balboa filed its Complaint and case-initiating documents on August 20, 2024. [*See* Dkts. 1-4.] Vitacore was properly served on October 7, 2024, pursuant to Federal Rule of Civil Procedure 4. [*See* Dkt. 9.] On October 29, 2024, Balboa filed its Request for Clerk to Enter Default against Defendant ("Default Entry Request"), and the Clerk entered the default against the Defendant on October 30, 2024. [*See* Dkts. 10-11.]

Defendant is not a minor, an incompetent person, or a person in military service or otherwise exempt from a default judgment under the Servicemembers Civil Relief Act (the "SCRA"). [*See* Densen Decl., ¶4.]

Moreover, this Court has subject matter jurisdiction over the instant action. The amount in controversy, as alleged in the Complaint and as set forth herein, exceeds $75,000. [*See* Dkt. 1.] Plaintiff Balboa was and still operates as a California corporation with its principal place of business in Orange County, California. [*See* Dkt. 1, ¶1; *see also* Densen Decl., ¶8.] Balboa is also now a

wholly owned subsidiary of Ameris Bank, and operating as a division of Ameris Bank, a Georgia state-chartered banking corporation, and accordingly, Balboa is a citizen of the State of California, as well as the State of Georgia, via its parent company, Ameris Bank. [*See id*.]

Defendant Vitacore is a Nebraska corporation, with its principal place of business in Fillmore County, Nebraska. [*See id*., ¶9, Exh. D.] Thus, Vitacore is a citizen of the State of Nebraska. [*See id*.] As such, there exists complete diversity amongst the Plaintiff and Defendant. [*See id*., ¶10.]

As set forth below, a default judgment should be entered against the Defendant since Balboa satisfies all seven factors under *Eitel*. Moreover, Balboa has adequately proven its damages. Thus, Balboa respectfully requests that this Court grant its request for a default judgment against Defendant in the amount of **$99,706.36**.

## II.   LEGAL ARGUMENT

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," the Court may enter a judgment of default upon Plaintiff's Motion after an entry of default. *See* Fed. R. Civ. P. 55. Local Rule 55 sets forth the procedural requirements that must be satisfied by a party moving for a default judgment. Balboa's Motion has satisfied such requirements.

Here, Balboa filed its Complaint and case-initiating documents on August 20, 2024. [*See* Dkts. 1-4.] Vitacore was properly served on October 7, 2024, pursuant to Federal Rule of Civil Procedure 4. [*See* Dkt. 9.] On October 29, 2024, Balboa filed its Default Entry Request against Defendant, and the Clerk entered the default against the Defendant on October 30, 2024. [*See* Dkts. 10-11.]

Defendant is not a minor, an incompetent person, or a person in military service or otherwise exempt from a default judgment under the SCRA. [*See* Densen Decl., ¶4.]

The Ninth Circuit follow the seven *Eitel* factors in deciding whether to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). A plaintiff need not prove that all seven factors weigh in its favor, as courts *may* consider these factors in their discretion on whether to enter a default judgment. See *id*.

Here, the underlying facts in this action show that all seven of the *Eitel* factors weigh in Balboa's favor, and thus, supports the entry of default judgment.

### A. Plaintiff Will Be Highly Prejudiced If Its Motion for Default Judgment Is Denied.

A situation in which a plaintiff will be without any other recourse or recovery should its default judgment application be denied qualifies as prejudice. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Here, Balboa has submitted its Motion for Default Judgment as a last resort due to Defendant's deliberate unwillingness to accept responsibility for its actions or even acknowledge Balboa's allegations.

The fact remains that Balboa, pursuant to the EFA, financed the Collateral for Vitacore, with Vitacore agreeing to make sixty (60) monthly payments of $1,798.68, for which fifty-two (52) monthly payments, in addition to late charges in the sum of $323.76, for a total of $93,855.13, still remained due to Balboa at the time of Defendant's default. [*See* Ngo Decl., ¶¶4-5, Exhs. A-B.] Following Defendant's default, Defendant made two (2) additional full monthly payments for July 14, 2024 and August 14, 2024. [*See id*., ¶6.] Defendant has therefore been credited in the amount of $3,597.36. [*See id*.] Thus, **$90,257.77** remains owed to Balboa. [*See id*.]

Balboa has made demands for its monies from Defendant, all of which Defendant has failed to pay back. [*See id.*, ¶8.]

Balboa filed its Complaint in this action to recover the monies owed on it, but Defendant has been unwilling to participate in, or otherwise acknowledge, the litigation. Balboa's Motion for Default Judgment is its final option for an attempt at recovery, and without the Court granting the default judgment, Balboa will be prejudiced and be denied its right to a judicial resolution of its presented claims. *See PepsiCo*, 238 F.Supp.2d at 1177.

Moreover, if Balboa's Motion for Default Judgment is denied, it will suffer a significant loss due to no fault of its own, and Defendant will obtain a significant windfall of over $99,706.36. Not only will the deliberate nonaction by Defendant and their continued stalling techniques be unjustly rewarded, but Balboa will effectively be penalized for its procedurally proper demands for the return of its monies available through the court system's proper channels.

Balboa will be substantially prejudiced, especially with no other available recourse, should its Motion for Default Judgment be denied, and thus, further supports the Default Judgment against Defendant to be granted by this Court.

**B.   Plaintiff Has A High Likelihood Of Success On The Merits Of Its Substantive Claims And Its Complaint Is Sufficiently Pled.**

"The general rule of law is that upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). Courts often consider the second (merits of the claim) and third (sufficiency of the complaint) factors under *Eitel* together. *See PepsiCo*, 238 F.Supp.2d at 1177.

The elements for a breach of contract are: (1) the existence of a contract, (2) performance by the plaintiff of its obligations under the contract, (3) breach of the contract by the defendant, and (4) resulting damages proximately caused by the defendant's breach of contract. *Reichert v. Gen. Ins. Co.*, 68 Cal.2d 822, 830

(1968); *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal.App.3d 887, 916 (1971); *see also* Civ. Code §§ 1620, 3300; and RESTATEMENT 2d. CONTRACTS § 235(2).

Here, all elements are met. Specifically, Balboa, on the one hand, and Vitacore, on the other, entered into the EFA, under which Balboa loaned to Vitacore the sum of $80,970.00, in order to finance the Collateral for its business. [*See* Ngo Decl., ¶3, Exh. A.]

Under the EFA, Vitacore was required to make sixty (60) monthly payments of $1,798.68, beginning on November 14, 2023. [*See id.*, ¶4, Exh. A.] The last payment received by Balboa was credited toward the payment due for June 14, 2024. [*See id.*] Therefore, on or about July 14, 2024, Vitacore breached the EFA by failing to make the monthly payment due on that date, and thus, has remained continuously in default. [*See id.*]

At the time of Defendant's default, in addition to late charges in the sum of $323.76, there remained fifty-two (52) monthly payments, for a total of $93,855.13, due to Balboa. [*See id.*, ¶5, Exh. B.]

Following Defendant's default, Defendant made two (2) additional full monthly payments for July 14, 2024 and August 14, 2024. [*See id.*, ¶6.] Defendant has therefore been credited in the amount of $3,597.36. [*See id.*] Thus, **$90,257.77** remains owed to Balboa. [*See id.*] Defendant has since failed to make further payments. [*See id.*]

There is no doubt, and it cannot be disputed that: (1) Balboa and Vitacore entered into the EFA; (2) Vitacore received the loan in order to finance the Collateral for its business; (3) Vitacore ceased making payments pursuant to the EFA; and (4) Balboa has suffered and continues to suffer damages due to Defendant's continued nonpayment of the EFA. Thus, Balboa has a substantially high likelihood in succeeding on the merits of its claims. In fact, no known defenses exist to any of the material facts.

### C. The Sum Of Money At Stake Favors An Entry Of A Default Judgment Against Defendant.

As a general rule, courts factor the sum of money at stake on a case-by-case basis, and in relation to the other factors influencing whether to enter default judgment. *See Eitel*, 782 F.2d at 1472 (default judgment was denied where plaintiff was seeking $3 million in damages *and* the parties disputed material facts). This requires the court to assess whether the recovery sought is proportional to the harm caused by defendant's conduct. *See Walters v. Statewide Concrete Barrier, Inc.*, No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ("[i]f the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted").

In *Penpower Tech, Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083 (N.D. Cal. 2008), despite reasoning that plaintiff's request for $677,075.37 in treble damages, $500,000.00 in punitive damages, $100,000.00 in statutory damages, attorneys' fees of $16,497.00, and costs of $2,005.00, were "speculative" and weighed against default judgment, the court nevertheless granted plaintiff's default judgment.

Here, Balboa seeks compensatory damages pursuant to the EFA in the amount of **$93,855.13**; prejudgment interest from July 14, 2024, the date of breach, to December 9, 2024, the date noticed for the hearing of this Motion for Default Judgment, in the amount of **$3,683.28**, plus **$24.72 per day** until the entry of judgment; statutory attorneys' fees, in the amount of **$5,210.31**; and costs in the amount of **$555.00**. [*See* Densen Decl., ¶¶5-7, Exh. C.]

The damages sought are contractually based and arise out of the clear terms and obligations of the EFA; the prejudgment interest was calculated at the statutory rate of ten percent (10%) per annum; and the attorneys' fees requested are fixed by Local Rule 55-3. [*See id.*, ¶¶7.]

As such, the sum of money sought is reasonable and far from speculative. It is also substantially less than the $3 million sought in *Eitel*, in which this sum, and

other factors, weighed in the favor of denying default judgment. And it is also substantially less than the roughly $1.3 million sought in *Penpower Tech*, in which default judgment was granted, despite the sum of money being deemed "speculative."

Thus, the sum of money sought in this action weighs in the favor of granting default judgment, especially in the light of the other seven *Eitel* factors, and due to the certainty and reasonableness of the sum.

### D. There Are No Material Facts That Are Reasonably In Dispute.

"The general rule of law is that upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *See Geddes, supra*, 559 F.2d at 560. Where a plaintiff's complaint is well-pleaded and the defendants make no effort to properly respond, the likelihood of disputed facts is very low. *See Landstar Ranger, Inc. v. Parth Enters, Inc.*, 725 F.Supp.2d 916, 921 (C.D. Cal. 2010).

As thoroughly detailed in Section II.B., *supra*, there are no material facts that are reasonably in dispute.

Here, specifically, Balboa, on the one hand, and Vitacore, on the other, entered into the EFA, under which Balboa loaned to Vitacore the sum of $80,970.00, in order to finance the Collateral for its business. [*See* Ngo Decl., ¶3, Exh. A.]

Under the EFA, Vitacore was required to make sixty (60) monthly payments of $1,798.68, beginning on November 14, 2023. [*See id.*, ¶4, Exh. A.] The last payment received by Balboa was credited toward the payment due for June 14, 2024. [*See id.*] Therefore, on or about July 14, 2024, Vitacore breached the EFA by failing to make the monthly payment due on that date, and thus, has remained continuously in default. [*See id.*]

At the time of Defendant's default, in addition to late charges in the sum of $323.76, there remained fifty-two (52) monthly payments, for a total of $93,855.13, due to Balboa. [*See id.*, ¶5, Exh. B.]

Following Defendant's default, Defendant made two (2) additional full monthly payments for July 14, 2024 and August 14, 2024. [*See id.*, ¶6.] Defendant has therefore been credited in the amount of $3,597.36. [*See id.*] Thus, **$90,257.77** remains owed to Balboa. [*See id.*] Defendant has since failed to make further payments. [*See id.*]

Defendant cannot dispute any of the facts in any way or make any reasonable arguments surrounding any of the material facts in this action. If anything, Defendant's refusal to participate in, or even acknowledge the litigation, is evidence that no such defense exists.

### E.    Defendant's Default Is Not The Result Of Excusable Neglect.

Excusable neglect is not found where a defendant who was properly served simply ignored the deadline to respond. *See NewGen, LLC v. Safe Cig, LLC*, 804 F.3d 606, 616 (9th Cir. 2016) (adding that defendant's counsel contacting plaintiff's counsel after default had been entered did not constitute to "excusable neglect"). In fact, courts have required some showing of good faith by the defaulted defendant to constitute "excusable neglect." *See Eitel*, 782 F.2d at 1471-72 (defendant's failure to answer was held to be excusable neglect in light of ongoing settlement negotiations); *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) (finding excusable neglect where defendant filed an answer past the deadline and on the same day that the motion for default judgment was filed); *O'Connor v. State of Nevada*, 27 F.3d 357, 364 (9th Cir. 1994) (excusable neglect was found where defendant has good faith of a timely answer); *Educational Serv., Inc. v. Maryland State Board for Higher Education*, 710 F.2d 170, 176 (4th Cir. 1983) (excusable neglect found where defendant had appeared in the action and opposed a request for a preliminary injunction in which the party had set forth its defenses); *McKnight v.*

*Webster*, 499 F.Supp. 420, 424 (E.D. PA 1980) (excusable neglect found where defendant sought an extension of time to respond, but a default judgment was sought in the interim).

Where the defendants "were properly served with the Complaint, the notice for the entry of default, as well as documents in support of the instant [default judgment application]," favors this factor for the entry of default judgment. *See Shanghai Automation Instrument Co. Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001).

Here, Defendant failed to make any showing whatsoever that its unwillingness to participate in the litigation stemmed from, or was in any way due to, excusable neglect. Vitacore was properly served by personally leaving copies of them with Christine L. Coash, as the registered agent for service of process of Vitacore, at 1036 N. 9th St. Geneva, NE 68361. [*See* Dkt. 9.]

Further, Defendant was additionally served at the same address thereafter with the Default Entry Request. [*See* Dkt. 10.] Defendant has not yet made any appearance in the action, and thus, has not made any effort to answer, defend, or otherwise participate, in this action.

As detailed above, courts have found for excusable neglect only in cases in which a defendant makes good faith showing that the defendant attempts to participate in the litigation to address and defend the allegations set forth against the defendant. Declining to respond to a complaint after proper service (even in the case where defendant's counsel contacts plaintiff's counsel after the entry of default), does not warrant a finding of excusable neglect. *See NewGen*, 804 F.3d at 616.

Here, Defendant has failed to acknowledge its wrongdoings and the allegations it faces, even in the slightest degree. Instead, Defendant has blatantly ignored Balboa's Complaint and all other papers filed thereafter. Rather,

Defendant's course of action in response to Balboa's Complaint, or the apparent lack thereof, is intentional, and thus, would not constitute excusable neglect.

### F. Policy Concerns Favor Default Judgment In This Matter.

Although courts have expressed that as a general rule, policy favors decisions on the merits, cases should be decided on its merits only when *reasonably possible*. *See Pena v. Seguros La Comercia, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985) (emphasis added). The policy preference to decide a case on its merits is not dispositive, and thus, does not preclude a court from granting a default judgment. *See Penpower Tech, Ltd.*, 627 F.Supp.2d at 1093 (defendants' failure to respond to a Complaint makes a case decision on its merits impractical, if not, impossible).

Here, even the policy concerns to decide a case on its merits favor Balboa to grant Balboa's request for a default judgment. As detailed in II.E., *supra*, Defendant has made it abundantly clear that it will not participate in this litigation, or even acknowledge the instant action. Defendant has deliberately chosen a course of action to simply ignore Balboa and its claims against it, including its own liability. Thus, the Court's decision will not be based on the merits of this case since there is no reasonable possibility at this point given Defendant's refusal to participate in this litigation.

Moreover, policy concerns certainly do not weigh in favor of rewarding Defendant for its unwillingness to account for its liability to Balboa, and the extremely prejudicial windfall it would receive should its deliberate silence and stalling techniques be rewarded, at Balboa's expense. *See* Section II.A., *supra*.

### G. Plaintiff Has Proven Its Damages.

Under the EFA, Vitacore was required to make sixty (60) monthly payments of $1,798.68, beginning on November 14, 2023. [*See id.*, ¶4, Exh. A.] The last payment received by Balboa was credited toward the payment due for June 14, 2024. [*See id.*] Therefore, on or about July 14, 2024, Vitacore breached the EFA

by failing to make the monthly payment due on that date, and thus, has remained continuously in default. [*See id*.]

At the time of Defendant's default, in addition to late charges in the sum of $323.76, there remained fifty-two (52) monthly payments, for a total of $93,855.13, due to Balboa. [*See id*., ¶5, Exh. B.]

Following Defendant's default, Defendant made two (2) additional full monthly payments for July 14, 2024 and August 14, 2024. [*See id*., ¶6.] Defendant has therefore been credited in the amount of $3,597.36. [*See id*.] Thus, **$90,257.77** remains owed to Balboa. [*See id*.] Defendant has since failed to make further payments. [*See id*.]

In addition, based on the amount due of $90,257.77, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from July 14, 2024, the date of breach, to December 9, 2024, the date noticed for the hearing of this Motion for Default Judgment, for a total interest amount of **$3,683.28**, accruing at a rate of **$24.72 per day**, until the entry of judgment. [*See id*., ¶7; *see also* Densen Decl., ¶¶5-7, Exh. C.]

Pursuant to the EFAs, Balboa is entitled to recover its attorneys' fees and costs from Defendant. [*See* Densen Decl., ¶¶7 Exh. C.] The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of **$5,210.31** for the EFA. [*See id*.] Balboa has indeed incurred **$555.00**, in recoverable costs. [*See id*.]

Altogether, this totals out to **$99,706.36** (as of December 9, 2024), calculated as follows:

| | | |
|---|---|---|
| - Amount Owed: | $ | 90,257.77 |
| - Prejudgment Interest: | $ | 3,683.28 |
| - Attorneys' Fees: | $ | 5,210.31 |
| - Recoverable Costs: | $ | 555.00 |
| **Total** | | **$ 99,706.36** |

### III. **<u>CONCLUSION</u>**

Based on Balboa's Complaint, Motion for Default Judgment, and all supporting papers, Balboa respectfully requests that the Court grant its Motion for Default Judgment against Defendant, in the total amount of **$99,706.36**.

DATE: November 12, 2024          SALISIAN | LEE LLP

By: _/s/ Jared T. Densen_____
       Jared T. Densen
       Patty W. Chen
       Neal S. Salisian

Attorneys for Plaintiff
AMERIS BANK d/b/a BALBOA CAPITAL